IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | STEPHANIE OBERST, | ) |
| | | ) |
| | Plaintiff, | ) |
| | | ) |
| v. | | ) Case No.   CIV-16-826-M |
| | | ) |
| (1) | QUANTUM HEALTH CARE, INC., | ) |
| | a domestic, for-profit business corporation, | ) |
| | | ) |
| | Defendant. | ) |

## COMPLAINT

Plaintiff Stephanie Oberst ("Plaintiff"), for her cause of action against Defendant

Quantum Health Care, Inc. ("Defendant"), alleges and states:

### The Parties

1.     At all relevant times, Plaintiff was and now is a resident of Comanche

County, State of Oklahoma.

2.     At all relevant times herein mentioned, Defendant was and now is an

Oklahoma corporation with its principal place of business in Comanche County, State of

Oklahoma.

### Jurisdiction and Venue

3.     This action arises and jurisdiction is proper under the provisions of 42

U.S.C.A. §2000e-5(f)(3), 28 U.S.C. §1331, and 28 U.S.C. §1387.

4.     Venue is proper in the Western District of Oklahoma in that the

employment practices hereinafter alleged to be unlawful were committed in the Western

District of Oklahoma pursuant to 28 U.S.C. Section 1391(c).

## FACT ALLEGATIONS

5.      Plaintiff started her employment with Defendant in December 2014 as a home health registered nurse.  She spent most of her employment as RN Case Manager over home health patients.

6.      Prior to June 2015, Plaintiff was told that she was performing satisfactorily, and she had a good relationship with her supervisor, Kathy Graham ("Graham").

7.      In early June 2015, Plaintiff underwent an in vitro fertilization procedure in order to become pregnant.

8.      Plaintiff kept Graham informed about the process, and, after Plaintiff learned the procedure was successful, she told Graham that she was pregnant.

9.      Plaintiff's pregnancy did not require any significant alteration or accommodations to her work schedule or work responsibilities.

10.      However, soon after learning that Plaintiff was going through the process and that she had ultimately became pregnant through in vitro, Graham began treating Plaintiff differently.  Graham was very short, aggressive and hostile towards Plaintiff and consistently appeared to be angry and upset with Plaintiff.

11.      In June 2015, Plaintiff returned from bed rest due to the in vitro fertilization and her pregnancy.  She had a full workload, but, despite already being sufficiently busy working with these patients, Graham informed Plaintiff that Graham was adding a patient, referred to as a Start of Care ("SOC"), to Plaintiff's load.

12.      When Plaintiff indicated that she was sufficiently busy, and that it was probably not good for her to be working long hours upon just returning to the workplace,

2

Graham told her, something to the effect that, "I have been more than lenient with you and your baby-making ordeal; you will do this SOC today."

13.     Plaintiff reported this to Sam Gohsn ("Gohsn"), Defendant's owner, who indicated that he would talk to Graham and have her apologize.

14.     A few weeks later, in July 2015, Graham apologized to Plaintiff about the way she had been treating her, telling Plaintiff that she had been hard on Plaintiff lately because her daughter had recently undergone in vitro fertilization, but it was not successful, and Graham's daughter had not become pregnant.

15.     In September 2015, Plaintiff had concerns about a patient whose care was covered by Tricare insurance.  In order for the insurance to cover home health services, the patient was required to be homebound, and Plaintiff learned that the patient was not truly homebound.

16.     Because of the concerns about possible insurance fraud, Plaintiff reported this matter to Graham and another supervisor, Lynette Carter ("Carter").  While Graham took no action, Carter indicated that Plaintiff should discharge the patient and call the patient's doctor, social work, and the wound care clinic.  Plaintiff did so and placed a note in the patient's file explaining the situation and that Plaintiff had previously expressed her concerns to her supervisors, but was told that her concerns were not valid.

17.     The next day, Graham told Plaintiff that if she did not take the note out of the file by the end of the day, she would be terminated.  Graham also said she was going to go to the patient's house and tell the patient that Plaintiff was not a good fit to provide care and treatment.

3

18.     On or around October 12, 2015, Plaintiff's job duties were increased.  In addition to working as RN Case Manager over home health patients, Plaintiff was assigned to work as the RN over the Chateau Assisted Living Center and to take on Promise Care Hospice patients.  She was told that it was a "good idea" to send her over there to Chateau because of her pregnancy.

19.     Because of the working conditions at Chateau, it was well-known that Defendant would send employees to work at that facility if it wanted to get rid of those employees.

20.     Plaintiff informed Graham and Gohsn that she had concerns about these assignments because of the workload it placed on Plaintiff and because Plaintiff was not experienced in these different areas.  Plaintiff believed that this was being done as a way to force her to quit her employment.

21.     Gohsn told Plaintiff that the new assignments would only be for a short period of time and that she would receive a pay increase.  However, Plaintiff never received the pay raise.

22.     Moreover, on November 12, 2015, Gohsn and Graham met with Plaintiff and gave her three (3) options – to quit, to continue to perform the three (3) jobs she had recently been assigned, or to change her pay structure so that she was paid per visit. Gohsn told Plaintiff that, since she was a great nurse, she would not be terminated.

23.     However, the next day, Plaintiff was called into the office after completing her visits.  Graham told her that Ghosn had to leave the office, but that he and Graham had decided to "let you go.  We wish you well."

4

24.     Defendant never provided a reason as to why Plaintiff was being terminated.

25.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on December 8, 2015, and the EEOC issued its Dismissal and Notice of Rights letter on June 1, 2016.

## FIRST CAUSE OF ACTION – VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT, AS AMENDED, FOR GENDER DISCRIMINATION AND PREGNANCY DISCRIMINATION

26.     Plaintiff incorporates by reference paragraphs 1 through 25 as though set forth in full herein.

27.     At all relevant times, Plaintiff was and is a pregnant female, and a member of a class protected by Title VII of the 1964 Civil Rights Act, as amended.

28.     Defendant was, and now is an "employer" within the meaning of Title VII of the 1964 Civil Rights Act, as amended, and did and now does employ more than 15 persons.

29.     The Pregnancy Discrimination Act primarily prohibits discrimination on the basis of pregnancy as a medical condition and establishes that pregnant employees should be treated like other employees similar in their ability or inability to work for all employment-related purposes.

30.     As stated herein, Plaintiff was treated differently because of her pregnancy and was terminated from her employment soon after Defendant learned of her pregnancy although she had no medical restrictions from her physician.

31.     Plaintiff's gender was also a motivating and significant factor in the failure

5

to accommodate her pregnancy and in her termination.

32.     As a direct and proximate result of Defendant's discriminatory treatment and actions herein above alleged in violation of Title VII of the 1964 Civil Rights Act, as amended, Plaintiff has suffered, and is now suffering, and will continue to suffer, irreparable injury and economic loss, as well as damages for emotional distress, mental anguish, embarrassment, humiliation, and loss of enjoyment of life. Plaintiff seeks all of the relief afforded by Title VII of the 1964 Civil Rights Act, as amended, including economic damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

33.     Plaintiffs have complied with all of the administrative requirements prior to filing this action, and this action has been filed within ninety (90) days from the issuance of the letter by the Equal Employment Opportunity Commission of its Notice of Suit Rights.

34.     Plaintiffs further seek punitive and exemplary damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) and as determined by the jury at the time of trial.

WHEREFORE, Plaintiff demands and prays against Defendant as follows:

(1)     That a judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant in violation of Title VII of the 1964 Civil Rights Act, as amended.

(2)     That Defendant be ordered to make Plaintiff whole by providing back pay, front pay, compensation for mental pain and suffering and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to reputation, and loss of enjoyment of life, and any and all other remedies authorized by Title VII of the 1964 Civil Rights Act, as amended, including, but not limited to, punitive damages.

(3)    That Defendant is enjoined from discriminating against Plaintiff in any manner that violates Title VII of the 1964 Civil Rights Act, as amended.

(4)    That Plaintiff be awarded her costs and expenses of this litigation, including reasonable attorney's fees, and expert witness fees; and

(5)    That Plaintiff be granted such other legal and equitable relief as the Court may deem just and proper and in compliance with Title VII of the 1964 Civil Rights Act, as amended, including punitive damages.

## SECOND CAUSE OF ACTION FOR
## RETALIATORY DISCHARGE OF EMPLOYMENT

35.    Plaintiff incorporates by reference herein Paragraphs 1 through 34 as though set forth in full.

36.    Oklahoma statutes and regulations prohibit the presentation of a false or fraudulent insurance claim.   These statutes and rules make clear the public policy of Oklahoma that all those in healthcare industry must honestly submit insurance claims to ensure that payments through insurance are made legally, which can impact the general public at large.

37.    As stated herein, Plaintiff reported what she witnessed as a possible violation of the law in order to ensure that Defendant did not participate in a violation of law or public policy.  However, Defendant pressured Plaintiff to not report the perceived insurance fraud, and threatened her with termination if she did not remove a note in the file explaining what had occurred.

38.    Plaintiff refused to remove the note.  However, because she did not remove the note as Graham requested, she was retaliated against in the workplace as set forth herein and was ultimately terminated from her employment.

7

39.     Plaintiff reported action in violation of public policy and refused to cooperate in Defendant's unlawful actions, and her termination was therefore in clear violation of the public policy of this state under the standards articulated in *Burk vs K-Mart*, 1989 OK 22, 770 P.2d 24.

40.     As a direct result of Plaintiff's retaliatory discharge of employment, she suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, embarrassment, humiliation, injury to her reputation, and lost enjoyment of life, all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1)     For actual damages in a sum in excess of $75,000.00, and as determined by the jury at the time of trial;

(2)     For interest thereon as provided by law both pre-judgment and post-judgment;

(3)     For her costs; and,

For such other and further relief as the Court deems just and proper.

s/Woodrow K. Glass
Stanley M. Ward, OBA#9351
Woodrow K. Glass, OBA#15690
WARD & GLASS, L.L.P.
1601 N.W. 36th Street, Suite 100
Norman, OK  73072
405-360-9700
405-360-7902 Fax

-and-

8

BROCKMAN LAW, PLLC
Scott F. Brockman, OBA #19416
10601 S. Western, Suite 117
Oklahoma City, OK  73170
405-703-2499
405-703-4499  Fax
scott@brockmanlawpllc.com
ATTORNEYS FOR PLAINTIFF

JURY TRIAL DEMANDED
ATTORNEYS' LIEN CLAIMED