IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

STEPHANIE OBERST,                )
                                 )
                Plaintiff,       )
                                 )
v.                               )        Case No. CIV-16-826-M
                                 )
QUANTUM HEALTH CARE,             )
INC.,                            )
a domestic, for-profit business  )
corporation,                     )
                                 )
                Defendant.       )

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## WITH BRIEF IN SUPPORT

---

Edward W. Dzialo, Jr., OBA #2579
Godlove, Mayhall, Dzialo & Dutcher, PC
802 "C" Avenue P.O. Box 29
Lawton, Oklahoma 73502
Telephone:  (580) 353-6700
Facsimile:  (580) 353-2900
E-mail:  ewd@gmdde.com

Attorney for Defendant

## TABLE OF CONTENTS

INTRODUCTION ………...………………………………………………….   i

UNDISPUTED MATERIAL FACTS …………..………………………………   ii

I.  BACKGROUND …………………………………………………………..   2

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ……………….   3

III.  STANDARD FOR SUMMARY JUDGMENT …………………………   9

IV.  PLAINTIFF'S CLAIM OF PREGNANCY DISCRIMINATION FAILS
AS A MATTER OF LAW …………………………………………………   10

    A.  Assuming that the Plaintiff can state a *prima facie* case, Quantum
can provide a legitimate, non-discriminatory reason for terminating
the Plaintiff …………………………………………………………   12

    B.  The Plaintiff cannot show her pregnancy was a determining factor
in her termination or that Quantum's reason for terminating her
was merely a pre-text for pregnancy discrimination ……………   13

        i.  There is no evidence of similarly situated non-pregnant
Employees systematically receiving better treatment …….   14

        ii.  Plaintiff cannot rely on timing alone under the circumstances
of this case …………………………………………………..   15

        iii.  There is no evidence from which a reasonable jury could
Find Quantum's decision unworthy of belief ……………...   16

V.  PLAINTIFF'S "BURK" CLAIM FAILS AS A MATTER OF LAW …..   18

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..... 9

Antonio v. Svgma Network, Inc.,
   458 F.3d 1177, 1184 (10th Cir. 2006) ……………………. 17

Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.,
   912 F.2d 1238, 1241 (10th Cir. 1991) ………………………. 9

Atchley v. Nordam Group, Inc.,
   180 F.3d 1143, 1148 (10th Cir. 1999) …………………. 10, 11, 13

Barker v. State Insurance Fund,
   40 P.3d 463 (Okla. 2001) …………………………… 19, 20, 23

Beaird v. Seagate Tech., Inc.,
   145 F.3d 1159, 1166 n.3 (10th Cir. 1998) ………………… 12

Brooks v. Gaenzle,
   614 F.3d 1213 (10th Cir. 2010) ……………………………. 18

Burk v. K-Mart,
   1989 OK 22, 770 P.2d 24 ………………………………… 18, 19, 20

Bush v. Dictaphone Corp.,
   161 F.3d 363, 369 (6th Cir. 1998) ………………………… 16

Carter v. Pathfinder Energy Servs., Inc.,
   662 F.3d 1134, 1149 (10th Cir. 2001) …………………….. 12

Celotex v. Catrett,
   477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d. 265 (1986) ………. 9, 10

Clinton v. Sate ex rel. Logan County Election Board,
   2001 OK 52, 29 P.3d 543, 546 (Okla. 2001) ……………… 23

Cone v. Longmont United Hosp. Ass'n.,
 14 F.3d 526, 531 (10th Cir. 1994) ……………………………………     16

Darrow v. Integris Health, Inc.,
 2008 OK 1, ¶ 13, 176 P.3d at 1212 ……………………………………     19, 21

EEOC v. Ackerman, Hood & McQueen,
 956 F.2d 944, 947 (10th Cir. 1992) …………………………………     11

Forde v. Beth Israel Med. Ctr. *et al.,*
 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008) ………………………     15

Garrison v. Gambro, Inc.,
 428 F.3d 933, 938, 150 Fed. Appx. 819 (10th Cir. 2005) …………     17

Gleason v. Mesirow Fin., Inc.,
 118 F.3d 1134, 1140 (7th Cir. 1997) ………………………………     16

Griffin v. Mullnix,
 1997 OK 120, 947 P.2d 177 ……………………………………….     18

Gover v. Speedway Super Am., LLC.,
 284 F. Supp. 2d 858, 864 (S.D. Ohio 2003) …………………….     16

Haynes v. Pennzoil Co.,
 207 F.3d 296, 300 (5th Cir. 2000) ………………………………     14

Jenkins v. Wood,
 81 F.3d 988, 990 (10th Cir. 1996); Celotex, 477 U.S. at 322 …....     10

Jones v. Kodak Med. Assistance Plan,
 169 F.3d 1287, 1290 (10th Cir. 1999) ……………………………     9

Jones v. Unisys Corp.,
 54 F.3d 624, 630 (10th Cir. 1995) ………………………………     11

Kaus v. Standard Ins. Co.,
 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd* 162 F.3d 1173
 (10th Cir. 1998) ……………………………………………………     10

Leeker v. Gill Studios, Inc.,
    21 F. Supp. 2d 1267, 1273 (D. Kan. 1998) ……………………..       16

Love v. Re/Max of Am.,
    738 F.2d 383, 385 (10th Cir. 1984) ………………………….       11

McCrady v. Okla. Dept. of Pub. Safety,
    2005 OK 67, ¶ 9, 122 P.3d 473, 475 …………….………….………..       19

McDonnell Douglas v. Green,
    411 U.S. 792 (1973) ……………………………………………….       11

Murray v. City of Sapulpa,
    45 F.3d 1417, 1420, 1421 (10th Cir. 1995) ……………………..       12

O'Hara v. Saint Francis Hosp., Inc.,
    917 F. Supp. 1523, 1531 (N.D. Okla. 1995) …………………..       14, 15

Pueblo v. Neighborhood Health Ctrs., Inc.,
    847 F.2d 642, 649 (10th Cir. 1988) …………………………...       10

Reeves v. Sanderson Plumbing Prods.,Inc.,
    530 U.S. 133, 142, 120 S. Ct. 2097,
    147 L. Ed. 2d 105 (2000) ……………………………………….       12

Riggs v. AirTran Airways, Inc.,
    497 F.3d 1108, 1119 (10th Cir. 2007) ………………………….       17

Robbins v. Jefferson County Sch. Dist.,
    186 F.3d 1253, 1259 (10th Cir. 1999) ………………………….       13

Shapolia v. Los Alamos Nat'l Lab.,
    992 F.2d 1033, 1036 (10th Cir. 1993) ………………………….       9

Stone v. Autoliv ASP, Inc.,
    210 F.3d 1132, 1140 (10th Cir. 2000) ………………………….       16

Stone v. Integris Health,
    2009 U.S. Dist. Lexis 82130 ………………………………..       16

Troupe v. May Dept. Stores Co.,
  20 F.3d 734, 737 (7th Cir. 1994) …………………………   14, 15

Vasek v. Board of County Com'rs,
  2008 OK 35, 186 P.3d 928 …………………………………..   19

Wilburn v. Mid-South Health Development, Inc.,
  343 F.3d 1274 (10th Cir. 2003) ……………………………..   20

Wolz v. The Deaton-Kennedy Co.,
  No. 98 C 6610, 2001 WL 699096, at *4
  (N.D. Ill. June 20, 2001) ……………………………………   15

## STATUTES

Fed. R. Civ. P. 56(c) ………………………………………….   9, 10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STEPHANIE OBERST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-826-M |
| | ) | |
| QUANTUM HEALTH CARE, INC., | ) | |
| a domestic, for-profit business corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant, Quantum Health Care Inc., respectfully submits its motion for summary judgment and brief in support.

In order for the Court to have a full understanding of the issues presented for decision, a brief abstract of the record is reproduced here regarding the background of the case as well as a recitation of undisputed material facts pursuant to Rule 56 F.R.C.P.   All referenced testimony and documents are contained in Defendant's evidentiary exhibits as follows:

Exhibit 1 – Deposition of Stephanie Oberst

Exhibit 2 – K-mail exchanges

Exhibit 3 – Quantum's Responses to Plaintiff's Interrogatories

Exhibit 4 - Affidavit of Sam Ghosn

Exhibit 5 – Affidavit of Lynette Carter

Exhibit 6 – Affidavit of Kathy Graham

Exhibit 7 – Affidavit of Mesha Hughes

Exhibit 8 – Affidavit of Marla Dodd

## I.   BACKGROUND

Plaintiff, Stephanie Oberst, filed this action on July 22, 2016 against Quantum Health Care, Inc., alleging:

(i)   Violation of Title VII of the 1964 Civil Rights Act for Gender Discrimination and Pregnancy Discrimination.

(ii)   Retaliatory Discharge of Employment.

As shown below, Plaintiff's allegations are completely devoid of evidentiary support and fail to create any questions of fact for a jury.

Quantum Health Care Inc. provides services to home health patients and Ms. Oberst was hired as an RN Case Manager in December, 2014.  In late March or early April 2015, Ms. Oberst advised Quantum that she was seeking to become pregnant through In Vitro Fertilization (IVF).  Ms. Oberst confirmed that Quantum honored every request to be off work for her appointments. (Fact 3).  Although Plaintiff had a "high risk pregnancy" there were no restrictions on her duties as an RN Case Manager and she did not request special accommodations. (Fact 7).  Plaintiff's retaliatory discharge claim arises from her personal opinion that a patient was not "homebound and eligible for TriCare Services."   Although Ms. Oberst had the authority to

2

discharge the patient, she did not do so.  It was not until she saw that management was not going to discharge the patient that she claimed Quantum was engaging "in possible fraud."  Ms. Oberst did not know how management resolved the "homebound question", however she believed Quantum was committing fraud if they kept him on as a billable patient.  After an investigation, Quantum confirmed the patient was "homebound" and continued home health treatment.  Thereafter the patient was assigned to another nurse.  These events took place September 23-25, 2015 and Plaintiff was certainly not fired because of her opinions regarding the patient's "homebound" status.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS
### (Rule 56 FRCP)

1.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 8, 2015 and the EEOC issued its Dismissal and Notice of Rights of letter on June 1, 2016 (Complaint, Doc. 1 ¶25).

2.    Ms. Oberst started her employment with Quantum Health Care, Inc. in December, 2014 as a Home Health Registered Nurse.  She spent most of her employment as an RN Case Manager over home health patients (Complaint, Doc. 1 ¶5).

3.    Plaintiff provided the Director of Nursing (DON), Kathy Graham, with a copy of her IVF schedule which had all the dates on it and they did not express any

displeasure with Plaintiff pursuing the IVF process and **Quantum granted every request for these days off** (Pl's Depo., Exhibit 1, pg. 98; lines 4-13).

4.      Ms. Oberst's time off for the IVF process included 3 days of bed rest on June 23, 24 and 25 which were all work days. (Pl's Depo., Exhibit 1, pg. 109; lines 3-5).

5.      In Ms. Oberst's mind, Quantum was supporting her IVF process and getting pregnant by letting her have these days off.  Moreover, Ms. Oberst stated that from December 1, 2014 through at least the last day of her bed rest June 25, 2015, no one engaged in any conduct which she considered discriminatory.   (Pl's Depo., Exhibit 1, pg. 110; lines 2-25).

6.      On June 15, 2015, Kathy Graham advised Ms. Oberst that she had pulled four visits off her and moved them to Stacy to help lighten her work load.  Moreover, Ms. Graham stated she wanted to support Ms. Oberst fully in her conception endeavor and reserved the right to recoup some of this extra time off in future weeks.  Ms. Oberst provided an update on the IVF and on June 20, 2015 confirmed today she needed off because of bed rest. (Exhibit 2).

7.      Ms. Oberst told Quantum that she was consulting with a high risk pregnancy doctor, however she did not have any restrictions by her doctor.  Moreover, she never requested any accommodation. (Pl's Depo., Exhibit 1, pg. 21, lines 6-25).

8.      On or about May 18, 2015, Ms. Oberst requested that another RN take her call schedule for a week and Lynette Carter volunteered. (Pl's Depo., Exhibit 1, pg. 29, lines 19-25; pg. 30, lines 1-12).

9.      Plaintiff confirms that Kathy Graham put a copy of the company's FMLA policy on her desk. She believed it may have been the 1st of November. (Pl's Depo., Exhibit 1, pg. 27, lines 11-19).

10.      Ms. Oberst did not ask Kathy to provide her a copy of the FMLA policy and she initiated that on her own (Pl's Depo., Exhibit 1, pg. 28, lines 5-9).

11.      Ms. Oberst pointed out two instances where she felt she didn't get the full support of either management or her co-workers. In this regard, she felt Kathy Graham was real short with her for a couple of weeks at the end of June and early July. She asked Sam Goshn if there was something going on with Kathy and Kathy later apologized and disclosed that her daughter had went through IVF and it failed. (Pl's Depo., Exhibit 1, pg. 16, lines 3-22).

12.      According to Ms. Oberst the second incident was in early July when Kathy Graham added a "start of care". Ms. Oberst said she didn't know if it would be a good idea for her to work long hours today whereupon Kathy said "I have been more than lenient with you, Stephanie, and your baby making ordeal, you will do the start of care today." At this time, Ms. Oberst did not have any restrictions by her doctor and she did not tell Kathy Graham that she was not able to do this because of

how she felt.  Moreover, Ms. Oberst didn't request any accommodation. (Pl's Depo., Exhibit 1, pg. 20, lines 18-25; pg. 21, lines 1-23).

13.    Ms. Oberst was provided a document identifying her job responsibilities regarding her transfer to the Chateau.  The job description accurately described her responsibilities and Ms. Oberst confirmed that she actually moved over to the Chateau on Monday, October 12, 2015. (Pl's Depo., Exhibit 1, pg. 49, lines 12-25; pg. 50, lines 14-19).

14.    Ms. Oberst testified that she complained to co-workers about the transfer to the Chateau.  She recalled she spoke with Marla Dodd but could not remember anyone else. (Pl's Depo., Exhibit 1, pg. 50, lines 20-25; pg. 51, lines 1-12).

15.    Ms. Oberst did not mind being transferred to the Chateau, however she did not want to do all the duties listed on the job description.  Plaintiff was told by Kathy Graham that she was needed at the Chateau. (Pl's Depo., Exhibit 1, pg. 54, lines 13-24).

16.    In September 2015, Ms. Oberst was assigned to patient J.L. to perform skilled nursing services. (Pl's Depo., Exhibit 1, pg. 65, lines 2-25).

17.    Ms. Oberst had some concern whether patient J.L. was really "homebound." (Pl's Depo., Exhibit 1, pg. 66, lines 15-18).

18.    Ms. Oberst was scheduled to perform skilled nursing services near the end of September and he wasn't at the house.  Ms. Oberst found out after the fact that

patient J.L. had to go to the wound care center to get a script. (Pl's Depo., Exhibit 1, pg. 69, lines 11-25; pg. 70, lines 1-16).

19.    Ms. Oberst sent a K-mail to Lynette and Maria that she was concerned about patient J.L.'s status as homebound.  Kathy Graham was not listed as a recipient because Ms. Oberst would just go to Lynette.  Ms. Oberst was told to take her concerns to Lynette instead of Kathy before September 15, 2015. (Pl's Depo., Exhibit 1, pg. 134, lines 12-25; pg. 135, lines 1-15).

20.    Ms. Oberst testified that during her discussion with Kathy Graham regarding the patient J.L. charting incident, her pregnancy or IVF process was never brought up. (Pl's Depo., Exhibit 1, pg. 126, lines 22-25; pg. 127, lines 1-7).

21.    Ms. Oberst stated that no one ever told her they were terminating her because she was pregnant and confirmed she didn't get a reason at all. (Pl's Depo., Exhibit 1, pg. 138, lines 15-19).

22.    Plaintiff confirmed that she received a job description represented in document number 0347 (Pl's Depo., Exhibit 1, pg. 84, lines 17-25; pg. 85, lines 1-25; pg. 86., lines 1-10).

23.    Ms. Oberst did not know if her employer was happy with her work at the Chateau. (Pl's Depo., Exhibit 1, pg. 57, lines 7-9).

24.    Ms. Oberst stated that a patient who is determined to be "homebound can go to a medical appointment and attend church." (Pl's Depo., Exhibit 1, pg. 67, lines, 19-23).

25.     Plaintiff did not state in patient J.L.'s chart that he should be discharged. (Pl's Depo., Exhibit 1, pg. 69, lines 20-25).

26.     Plaintiff's involvement with patient J.L. ceased completely on September 24th. (Pl's Depo. Exhibit 1, pg. 219, lines 22-25).

27.     Plaintiff did not know whether patient J.L. had billable or non-billable visits. (Pl's Depo. Exhibit 1, pg. 213, lines 22-24).

28.     Ms. Oberst did not dispute the fact that she complained to co-workers about her working conditions and unfair task assignments. (Pl's Depo. Exhibit 1, pg. 174, lines, 15-18).

29.     According to Ms. Oberst it would be fraud if they sent in a claim as homebound and billable however, she did not know if that happened. (Pl's Depo. Exhibit 1, pg. 171, lines 24-25; pg. 172, lines 1-5).

30.     Plaintiff did not know whether patient J.L.'s treatment was discontinued and she never asked. (Pl's Depo. Exhibit 1, pg. 169, lines 13-17).

31.     Another RN, Lauren Hammontree, was pregnant and she was further along in her pregnancy than Ms. Oberst and confirmed that Lauren never related that she was discriminated against during her employment with Quantum. (Pl's Depo. Exhibit 1, pg. 24, lines 1-25; pg. 25, lines 1-18).

32.     Ms. Oberst confirmed the emails sent from Kathy Graham to Lynette Carter that she planned on working up until she went into labor. (Pl's Depo. Exhibit 1, pg. 32, lines 7-16).

33.     Ms. Oberst identified her job responsibilities that were provided to her regarding the transfer to the Chateau. (Pl's Depo. Exhibit 1, pg. 49, lines 19-25).

34.     Plaintiff's last day with Quantum was November 13, 2015. (Pl's Depo. Exhibit 1, pg. 56, lines 5-12).

## III.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Jones v. Kodak Med. Assistance Plan, 169 F.3d 1287, 1290 (10th Cir. 1999).  Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations admitted).  The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d. 265 (1986).

Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted). The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, Pueblo v. Neighborhood Health Ctrs., Inc., 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." Kaus v. Standard Ins. Co., 985 F. Supp. 1277, 1281 (D. Kan. 1997), aff'd 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. See e.g., Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996); Celotex, 477 U.S. at 322.

## IV.   PLAINTIFF'S CLAIM OF PREGNANCY DISCRIMINATION FAILS AS A MATTER OF LAW.

The Tenth Circuit has held that a claim under the PDA "is analyzed the same as other Title VII claims." Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1148 (10th

Cir. 1999), quoting <u>EEOC v. Ackerman, Hood & McQueen,</u> 956 F.2d 944, 947 (10th Cir. 1992). Thus, when assessing the Plaintiff's evidence, the court follows the three stage analysis in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973)

At the first stage, the Plaintiff must show: (1) she is within the protected class; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee. *See* <u>Atchley</u>, 180 F.3d at 1148. If the Court finds that the Plaintiff's claims meet the applicable *prima facie* test, the burden shifts to Quantum to articulate a "legitimate, nondiscriminatory reason" for its decision to take adverse action against the Plaintiff. *Id.* At this stage, Quantum need only produce evidence (not prove) that it had a non-discriminatory reason for taking an adverse action against the Plaintiff. *See* <u>Love v. Re/Max of Am.,</u> 738 F.2d 383, 385 (10th Cir. 1984). When Quantum meets this burden, the presumption of discrimination established by the *prima facie* showing "simply drops out of the picture," and the burden of persuasion shifts back to Plaintiff. <u>Jones v. Unisys Corp.,</u> 54 F.3d 624, 630 (10th Cir. 1995). In this third stage, the Plaintiff must show either that pregnancy discrimination was a determinative factor in Quantum's decision or that Quantum's explanation for its action was merely pretext. <u>Atchley</u>, 180 F.3d at 1149.

For the reasons discussed below, the Plaintiff's claim of pregnancy discrimination fails as a matter of law.

### A.   Assuming that the Plaintiff Can State a *Prima Facie* Case, Quantum Can Provide a Legitimate, Non-Discriminatory Reason for Terminating the Plaintiff.

In spite of the overwhelming evidence that Plaintiff was engaging in disruptive behavior, Quantum will assume for purposes of this motion that the Plaintiff's own testimony about her short tenure at Quantum will be sufficient to satisfy part two (2) of her *prima facie* case. *See* Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1166 n.3 (10th Cir. 1998) (noting that a Plaintiff may make out a *prima facie* case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time.) Quantum admits that all other *prima facie* elements have been met. Therefore, the burden shifts to Quantum to articulate a "legitimate nondiscriminatory reason" for its decision to discharge the Plaintiff. Murray v. City of Sapulpa, 45 F.3d 1417, 1420, 1421 (10th Cir. 1995).   Because Plaintiff has satisfied her burden of establishing a prima facie case of discrimination, the Court turns to whether Defendant has met its burden to articulate a legitimate, nondiscriminatory reason for Plaintiff's discharge.   "This burden is one of production, not persuasion; it can involve no credibility assessment." Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1149 (10th Cir. 2001) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Plaintiff's pregnancy had no causal connection with Plaintiff's termination. Rather, Quantum fired the Plaintiff because she engaged in disruptive behavior including, but not limited to:

1.   Repetitively calling current employees to complain about working conditions.

2.   General negativity.

3.   Employees came to management reporting that Ms. Oberst's constant negativity was draining them emotionally and they began screening out her phone calls.

4.   Ms. Oberst's refusal to discuss any alternative work assignments.

5.   Complaining to co-workers that the work assignment at the Chateau was not fair even after she agreed to do it.

6.   Requesting to be fired.  (Fact 14) (Exhibits 5, 6, 7, 8 & 9).

This facially legitimate and non-discriminatory reason for Plaintiff's discharge satisfies Quantum's stage two burden of persuasion. See Robbins v. Jefferson County Sch. Dist., 186 F.3d 1253, 1259 (10th Cir. 1999).

**B.   The Plaintiff Cannot Show Her Pregnancy Was A Determining Factor In Her Termination Or That Quantum's Reasons for Terminating Her Were Merely A Pretext for Pregnancy Discrimination.**

The burden of production having been met by Quantum, Plaintiff must now present enough evidence for a reasonable fact finder to conclude that pregnancy discrimination was a determinative factor in Quantum's decision to terminate her employment or that its explanation for her termination was merely a pretext. Atchley, 180 F.3d at 1149. Once claims reach the pretext stage, "the only question on summary

13

judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000). In the absence of any direct evidence of discrimination (which Plaintiff does not have), courts have held there are at least three types of circumstantial evidence in cases under the PDA, including: 1) evidence that similarly situated, non-pregnant employees systematically received better treatment; 2) evidence of suspicious timing, behavior, and other information from which an inference of discriminatory intent can be drawn; or 3) evidence that the Plaintiff was qualified and replaced by a non-pregnant person and that the employer's stated reason is unworthy of belief. O'Hara, 917 F. Supp. at 1530-31 (citing Troupe, 20 F.3d at 736). Failure to come up with this type of circumstantial evidence entitles Quantum to judgment as a matter of law.

### i.    THERE IS NO EVIDENCE OF SIMILARLY SITUATED NON-PREGNANT EMPLOYEES SYSTEMATICALLY RECEIVING BETTER TREATMENT.

First and foremost, there is no evidence that similarly situated, nonpregnant employees were treated better than the Plaintiff. There is likewise no evidence of discrimination against other pregnant employees at Quantum. In fact, Lauren Hammontree was pregnant during Plaintiff's tenure and was very complimentary of her treatment (Exhibit 2, page. 1). Thus, the "similarly situated" evidence in this case actually weighs heavily in favor of quantum. See O'Hara v. Saint Francis Hosp., Inc., 917 F. Supp. 1523, 1531 (N.D. Okla. 1995) (holding that the Plaintiff did not raise

an inference of pretext where there were other nurses who were pregnant, took maternity leave and returned to work without incident); <u>Wolz v. The Deaton-Kennedy Co.,</u> U.S. Dist. LEXIS 8462 (granting summary judgment in spite of alleged negative comments about absenteeism related to pregnancy.

### ii.   PLAINTIFF CANNOT RELY ON TIMING UNDER THE CIRCUMSTANCES OF THIS CASE.

Second, under the circumstances of this case, Plaintiff cannot rely upon timing to defeat summary judgment. In light of Quantum's undisputed support for Plaintiff's IVF process, it is impossible for Plaintiff to claim she was not treated the same as nonpregnant employees.   Numerous courts have held under similar circumstances that a close proximity between a pregnancy announcement and adverse action is not enough to defeat summary judgment. *See* <u>Troupe v. May Dept. Stores Co.,</u> 20 F.3d 734, 737 (7th Cir. 1994). (holding that pregnant employee's discharge one day prior to maternity leave did not preclude summary judgment); <u>O'Hara,</u> 917 F. Supp. at 1531 (granting summary judgment for employer even though write-ups began not long after the Plaintiff announced her pregnancy on the basis that timing alone is not enough to implicate discriminatory intent, particularly in light of the favorable evidence submitted by the employer regarding reasons for termination and treatment other pregnant employees); <u>Forde v. Beth Israel Med. Ctr. *et al.,*</u> 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008) (granting summary judgment for employer where the Plaintiff relied almost entirely on the close temporal proximity of her pregnancy announcement and termination which

alone was not enough to establish pretext); <u>Leeker v. Gill Studios, Inc.,</u> 21 F. Supp. 2d 1267, 1273 (D. Kan. 1998) (granting summary judgment for employer sued under the PDA where the Plaintiff failed to produce evidence from which a reasonable jury could believe the reason for termination was a false one and relied instead on timing).

### iii. THERE IS NO EVIDENCE FROM WHICH A REASONABLE JURY COULD FIND QUANTUM'S DECISION UNWORTHY OF BELIEF.

Faced with no evidence of similarly situated employees who were treated better than her, and without being able to rely on timing alone, the Plaintiff is expected to focus on comments by the Director of Nursing, Kathy Graham, in an effort to establish pretext. (Facts 11 & 12). This too fails as it is well-settled that stray comments are not sufficient to defeat summary judgment. See *e.g.,* <u>Bush v. Dictaphone Corp.,</u> 161 F.3d 363, 369 (6th Cir. 1998); <u>Gleason v. Mesirow Fin., Inc.,</u> 118 F.3d 1134, 1140 (7th Cir. 1997); <u>Cone v. Longmont United Hosp. Ass'n.,</u> 14 F.3d 526, 531 (10th Cir. 1994); <u>Gover v. Speedway Super Am., LLC.,</u> 284 F. Supp. 2d 858, 864 (S.D. Ohio 2003).

A Plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the company's termination decision. <u>Stone v. Autoliv ASP, Inc.,</u> 210 F.3d 1132, 1140 (10th Cir. 2000). The Court's attention is invited to Judge Friot's opinion in <u>Stone v. Integris Health,</u> 2009 U.S. Dist. Lexis 82130, wherein he stated:

16

> Plaintiff contends that Ms. Morgan was standoffish, was not receptive to questions, that she failed to communicate clearly, and that she did not seem to take the responsibility of training Plaintiff very seriously. Presuming these contentions are true and that Ms. Morgan had a grudge against Plaintiff, there **is no evidence that** the **source of the grudge had anything to do with Plaintiff's pregnancy.**

Furthermore, the passage of time can also render a comment too remote to support a finding of pretext. *See* Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1184 (10th Cir. 2006). According to Plaintiff, the second comment by Kathy Graham occurred in early July, 2015 (Fact 12) and Ms. Oberst's employment ended on November 13, 2015. (Fact 34).

When the Court evaluates alleged pretext, it must consider the facts as they appeared to the decision-makers, Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1119 (10th Cir. 2007). The Court will not second-guess an employer's business judgment or replace its opinion of best practices with either an employee's opinion or our own. Garrison v. Gambro, Inc., 428 F.3d 933, 938, 150 Fed. Appx. 819 (10th Cir. 2005). Thus, the Court does not ask whether an employer's decisions were wise or fair; they ask only "whether the employer honestly believed its reasons and acted in good faith upon them." Riggs, 497 F.3d at 1118-19.

Based on the undisputed evidence, Plaintiff cannot prove discrimination because she was pregnant. In fact, the evidence points to the inescapable conclusion that Quantum supported her IVF process and pregnancy. For these reasons, Quantum is entitled to summary judgment against Plaintiff.

In the event Plaintiff's federal claim is dismissed, Defendant requests that the Court decline pendent jurisdiction over the state claim for retaliatory discharge and dismiss that cause of action without prejudice.  Brooks v. Gaenzle, 614 F.3d 1213 (10th Cir. 2010).

## V.      PLAINTIFF'S "BURK" CLAIM FAILS AS A MATTER OF LAW

Plaintiff alleges that she was discharged for performing acts that were consistent with the public policies of Oklahoma citing Burk v. K-Mart, 1989 OK 22, 770 P.2d 24. In Burk, the Plaintiff, who was an at-will employee, brought a contract and tort action against her former employer alleging that her termination was a violation of an implied covenant of good faith and fair dealing. The Court recognized that at-will employees may be discharged for good cause, no cause or even cause which is morally wrong, without being guilty of a legal wrong. The Court went on to rule that a terminated employee might have a cause of action if the termination was in contravention of a clear mandate of public policy, cautioning that the public policy exception must be lightly circumscribed". The Burk court concluded by addressing the role of the trial court by noting that **frivolous lawsuits will be screened out by the courts on motions to dismiss or summary judgment.** Since issuing that opinion the Oklahoma Supreme Court has applied its ruling in a number of cases.

In Griffin v. Mullnix, 1997 OK 120, 947 P.2d 177, plaintiff asserted that the federal OSHA statutes and Oklahoma's own Occupational Safety & Health Standards Act provided

the public policy upon which he relied in support of his claim of wrongful termination. The Court rejected the Plaintiff's argument because the Oklahoma Act did not apply to the defendant as a private employer and determined the plaintiff could not maintain a claim of violation of public policy based solely upon federal law. In its opinion the Court recognized that, "the clear mandate of public policy required by Burk must be 'articulated by **constitutional, statutory or decisional law.**' Burk, 770 P.2d at 28." [emphasis added].

In Vasek v. Board of County Com'rs, 2008 OK 35, 186 P.3d 928 the Oklahoma Supreme Court further articulated the elements and burden on the plaintiff to state an actionable claim under Burk as follows:

> The elements of a claim for wrongful discharge of an at-will employee articulated in Burk and its progeny can be summarized. A viable Burk claim must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason **that violates** an Oklahoma public policy goal (4) **that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision** that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal. See McCrady v. Okla. Dept. of Pub. Safety, 2005 OK 67, ¶ 9, 122 P.3d 473, 475; See also Darrow, 2008 OK 1, ¶¶ 9-19, 176 P.3d at 1210-16. [emphasis added].

In Barker v. State Insurance Fund, 40 P.3d 463 (Okla. 2001), the Oklahoma Supreme Court noted that "Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation from retaliatory discharge." The Court, however, held that discharged employees of the State Insurance Fund (SIF) failed to articulate a well-defined public policy violation. The employees claimed that they had been discharged for disagreeing with the

management reorganization of the SIF, the outsourcing of claim files to outside counsel, and reductions in force. **The Court held that these complaints were based on personal opinions** about the way an organization was managed and therefore did not state a claim for a public policy violation that would constitute an exception to the at-will employment doctrine.

In <u>Wilburn v. Mid-South Health Development, Inc.,</u> 343 F.3d 1274 (10th Cir. 2003), a diversity case applying Oklahoma law, the Tenth Circuit applied <u>Barker</u> to a case involving an employee who claimed that she was discharged for reporting theft of medication and the falsification of medication records by another employee at a residential care facility.  The facility contended that the employee, Wilburn, was terminated because she did not follow the chain of command because otherwise she would have had to report the co-worker's misconduct to a supervisor who was a close friend of the co-worker.

Wilburn alleged that she was terminated in violation of the Oklahoma Uniform Controlled Dangerous Substance Act.  The Tenth Circuit, however, held that the existence of this statute, which criminalizes the theft of controlled dangerous substances, was not sufficient to establish the "clear mandate of public policy" necessary to state a <u>Burk</u> tort claim.  The Court affirmed the district court's grant of summary judgement for the facility.  Significantly, the Court held that the determination of a public policy exception to the general rule of at-will employment in Oklahoma is a question of law for the court.

Paragraph 37 of Plaintiff's Second Cause of Action for Retaliatory Discharge (Doc. 1) states as follows:

> As stated herein, Plaintiff reported what she witnessed as a possible violation of the law in order to ensure that Defendant did not participate in a violation of the law or public policy. However, Defendant pressured Plaintiff to not report the perceived insurance fraud, and threatened her with termination if she did not remove a note in the file explaining what had occurred.

Ms. Oberst was of the opinion that patient J.L. was not homebound and sent an internal Kmail to this effect. Although she had the authority to discharge the patient, she did not do so. In Ms. Oberst's mind, Quantum was committing fraud "if they kept him on as a billable patient." Ms. Oberst candidly admitted in her deposition that:

1. She never went back and checked on anything;

2. She did not know if the Doctor overruled the homebound opinion that she rendered;

3. She did not know whether people talked to TriCare regarding the patient's homebound status;

4. Plaintiff did not know whether a claim was submitted to TriCare that was fraudulent. Although Ms. Oberst determined the patient was not "homebound", she did not know whether her opinion was reversed or whether they continued services.

In <u>Darrow v. Integris Health Inc.</u>, 2008 OK 1, 176 P.3d 1204, 1210 (Okla. 2008), the Oklahoma Supreme Court determined that the trial court erred in dismissing the lawsuit on the ground that it failed to state a claim upon which relief could be granted.

Darrow's job was to seek payment for services provided to patients covered by Medicare, Medicaid and insurance benefits.  He had to verify the accuracy of patient information that was to be submitted to payer entities.  Darrow involved internal reports about Integris record discrepancies dealing with allegation of falsification of documents submitted to Medicare, possible Medicare fraud and concerns about patient safety.  The instant case is factually dissimilar to Darrow in that Ms. Oberst expressed her opinion that patient J.L. was not "homebound" and she **elected not to discharge him although she had the authority**.  The Court's attention is invited to the following deposition testimony of Ms. Oberst which appears at Exhibit 1, page 71, lines 12-25 and page 72, lines 1-6.

Page 71

> **Q.   And so once you reported it I think you made some reference to possible fraud.  Is that right?**
> A.   Correct.
> **Q.   Okay.  When you say possible fraud, possible fraud by who?**
> A.   The home health company and the administrator.
>
> **Q.   So, on the date that you report it you think that your employer has engaged in possible fraud?  Right?**
> A.   Not at that time.
> **Q.   When?**
> A.   It was after seeing that he was not going to be discharged and they were going to keep him on

Page 72

services and keep billing him and his insurance.

> **Q.   Okay.  And you don't know to what extent Quantum confirmed his homebound status.  Correct?  You don't know whether they had a conversation with the doctor, do you?**
>
> A.   I don't know.

Additionally, Ms. Oberst's position is that the possible fraud arises from Quantum's failure to adopt her opinion that patient J.L. was not "homebound." Ms. Oberst's opinion is similar to the opinion in <u>Barker,</u> supra. which was rejected by the Court.  Plaintiff has failed to identify an Oklahoma public policy goal that is clear and compelling and articulated in existing constitutional, statutory or jurisdictional law.  <u>Clinton v. Sate ex rel. Logan County Election Bd.,</u> 2001 OK 52, 29 P.3d 543, 546 (Okla. 2001).

Accordingly, it is appropriate for the Court to enter summary judgment in favor of Defendant on Plaintiff's "Burk" claim.

Respectfully submitted this 1st day of August, 2017.


GODLOVE, MAYHALL, DZIALO & DUTCHER


BY:_____
EDWARD W. DZIALO, JR. OBA # 2579
802 C Avenue, PO Box 29
Lawton, Oklahoma  73502
580.353.6700; Fax 580.353.2900
Email:  ewd@gmdde.com
Attorney for Defendant


23

## CERTIFICATE OF SERVICE

This is to certify that on this 1st day of August, 2017, the foregoing document was electronically served upon the following using the Court's CM/ECF system to:

Stanley M. Ward
Woodrow K. Glass
WARD & GLASS, L.L.P.
1601 36th Ave. NW
Norman, OK 73072

Scott F. Brockman
BROCKMAN LAW, PLLC
10601 S. Western, Suite 117
Oklahoma City, OK 73170

_____
Edward W. Dzialo, Jr.