IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| STEPHANIE OBERST, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| vs. | ) ) | Case No. CIV-16-826-M |
| QUANTUM HEALTH CARE, INC., a domestic, for-profit business corporation, | ) ) ) ) |  |
| Defendant. | ) |  |

## ORDER

Before the Court is defendant's Motion for Summary Judgment, filed August 1, 2017. On January 8, 2018, plaintiff filed her response, and on January 16, 2018, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I. Introduction

Defendant provides services to home health patients. Plaintiff was hired by defendant in December 2014 as an RN Case Manager. In late March or early April 2015, plaintiff advised defendant that she was seeking to become pregnant through in vitro fertilization ("IVF"). Between March and July, Kathy Graham, plaintiff's supervisor, learned that plaintiff had conceived, and plaintiff learned that Ms. Graham's daughter's IVF had failed. After these events, plaintiff alleges that Ms. Graham was treating her differently. Plaintiff was ultimately allowed to report to another RN Case Manager, rather than reporting to Ms. Graham.

In September 2015, plaintiff was assigned to patient J.L. to perform skilled nursing services. Plaintiff reported that patient J.L. was not homebound and that if defendant continued to bill TRICARE for the patient's care, defendant would be committing fraud. Plaintiff also wrote in patient J.L's chart that he was not homebound. Plaintiff alleges that Ms. Graham threatened to

fire her if she did not delete portions of her nursing note that stated her belief that patient J.L. was not homebound. Plaintiff, however, refused to alter the patient's chart.

On October 12, 2015, defendant transferred plaintiff to solely working at the Chateau, an assisted living facility. Plaintiff asserts that the transfer to the Chateau added new duties to her job. On November 13, 2015, defendant terminated plaintiff.

On July 22, 2016, plaintiff filed the instant action, alleging pregnancy discrimination and wrongful discharge in violation of Oklahoma's public policy. Defendant now moves for summary judgment as to both of plaintiff's claims.

## II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.　Discussion

　　A.　Pregnancy discrimination

The Tenth Circuit has held that "a pregnancy discrimination claim is analyzed the same as other Title VII claims." *Atchley v. Nordam Grp., Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999) (internal citation omitted). Thus, when reviewing a pregnancy discrimination claim, a court follows the three stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "At the first stage, the plaintiff must prove a prima facie case of discrimination. She must show: (1) she is within the protected class; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant employee." *Id.* (internal citations omitted). For purposes of its motion for summary judgment, defendant assumes that plaintiff can state a prima facie case of discrimination.

If a plaintiff proves a prima facie case of discrimination, the burden of production moves to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *See id.* Having carefully reviewed the parties' submissions, the Court finds that defendant has satisfied its burden of production and has articulated a legitimate, nondiscriminatory reason for terminating plaintiff. Specifically, defendant asserts that it terminated plaintiff because she engaged in disruptive behavior including, but not limited to: (1) repetitively calling current employees to complain about working conditions; (2) general negativity; (3) employees reporting to management that plaintiff's constant negativity was draining them emotionally and they had begun to screen out plaintiff's phone calls; (4) plaintiff's refusal to discuss any alternative work assignments; (5) complaining to co-workers that the work assignment at the Chateau was not fair; and (6) requesting to be fired.

> If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden of persuasion moves back to the plaintiff. In this third stage of the discrimination analysis, the plaintiff must show pregnancy was a determinative factor in the

3

> defendant's employment decision, or show the defendant's explanation for its action was merely pretext. Failure to come forward with evidence of pretext after the employer articulates a legitimate nondiscriminatory reason for its action will entitle the defendant to judgment.

*Id.* at 1148-49 (internal citation omitted). Typically, a plaintiff makes a showing of pretext in one of three ways: "(1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (internal citations omitted).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to whether defendant's legitimate, nondiscriminatory reason for terminating plaintiff was pretextual. Specifically, the Court finds plaintiff has submitted evidence that defendant's stated reason was false. Plaintiff has testified that she never requested to be fired. Additionally, plaintiff has submitted evidence calling into doubt the extent to which plaintiff would complain to her coworkers and the extent to which plaintiff was disruptive. Additionally, plaintiff has submitted evidence indicating that defendant failed to follow its written policy for documenting and correcting plaintiff's allegedly disruptive behavior.

Accordingly, the Court finds that defendant is not entitled to summary judgment as to plaintiff's pregnancy discrimination claim.

B.   Wrongful discharge in violation of Oklahoma's public policy

> *Burk*[1] was the landmark case wherein the [Oklahoma Supreme] Court adopted a public policy exception to the at-will termination rule in a narrow class of cases in which the discharge of an employee is contrary to the clear mandate of public policy as articulated by constitutional, statutory, or decisional law.

*Moore v. Warr Acres Nursing Ctr., LLC*, 376 P.3d 894, 899 (Okla. 2016).

> A viable *Burk* claim must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

*Id.* at 899-900 (internal citation omitted).

Defendant asserts that plaintiff's *Burk* claim fails as a matter of law because plaintiff has failed to identify an Oklahoma public policy goal that is clear and compelling and articulated in existing constitutional, statutory or jurisdictional law. Having carefully reviewed the parties' submissions, the Court finds that plaintiff has identified an Oklahoma public policy goal that is found in Oklahoma's constitutional, statutory, or decisional law, specifically, Oklahoma's Nursing Practice Act, Okla. Stat. tit. 59, §§ 567.1-567.26, and the Oklahoma Board of Nursing Rules, Okla. Admin. Code 485:10-11-1(b)(3)(A),(C), and (S). The Court finds that this Oklahoma public policy would protect plaintiff from retaliation for attempting to prevent fraudulent billing practices and for refusing to alter a patient's chart.

Accordingly, the Court finds that defendant is not entitled to summary judgment as to plaintiff's claim for wrongful discharge in violation of Oklahoma's public policy.

---

[1] *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989).

IV. Conclusion

For the reasons set forth above, the Court DENIES defendant's Motion for Summary Judgment [docket no. 18].

**IT IS SO ORDERED this 13th day of February, 2018.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE